TAENDSTICKSFABRIKS AKTICBOLAGAT VULCAN, Respondent, *v.* ELIJAH MYERS et al., Appellants.

In an action to restrain the use of a trade mark it is not necessary for plaintiff to show that any person has actually been deceived by defendant's alleged imitation ; it is sufficient for him to show his proprietary right to the trade mark and that defendant is selling similar goods, in packages having upon them marks and characters bearing a resemblance sufficiently close to those adopted by plaintiff for his trade mark to deceive the public. It is the liability to injury which the remedy may be invoked to prevent.

So, also, it is not necessary to show an intention on defendant's part to infringe upon plaintiff's trade mark; it is sufficient to show an actual infringement.

In such an action it appeared that plaintiff, a manufacturer of matches, put up and sold its goods in boxes, each having a label attached thereto, which had been adopted by plaintiff in 1883 as a trade mark and used continuously since that time. Upon the label was printed or stamped in red colors the words "The Vulcan," under this the words "Damp Proof," and under this a globe, upon each side of which was the representation of medals that had been awarded the plaintiff. Beneath the globe were the words "Trade Mark" and "Paraffin Matches." Defendants, in 1889, sold matches put up in boxes identical in size and general appearance with those of plaintiff, each bearing a label printed or stamped in red and with letters of the same size. Upon this label were the words "The Vulture," the picture of a vulture and a *fac simile* of the plaintiff's medals. Also, aside from the name, the same words as those upon plaintiff's label and arranged in the same way. *Held*, that defendant's label was an imitation of plaintiff's trade mark sufficiently close as to be liable to deceive; and that an injunction was properly awarded.

(Argued June 29, 1893; decided October 3, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 3, 1893, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to obtain an injunction restraining the defendants from an alleged infringing upon plaintiff's trade mark.

The facts, so far as material, are stated in the opinion.

*Michael H. Cardozo* for appellant.   Where the trade mark consists of pictures, symbols or a peculiar form or fashion of label, to constitute an infringement there must be such an imitation as to amount to a false representation liable to deceive the public. (*B. C. Co.* v. *Meyer*, 139 U. S. 540; *Hier* v. *Abrahams*, 82 N. Y. 519.)   The marked and distinct differences between the plaintiff's and defendants' boxes are apparent.   There was no proof in this case that anyone was liable to be deceived. (*E. M. S. Co.* v. *Troxell*, 89 N. Y. 292; *Popham* v. *Cole*, 66 id. 69; *Harrington* v. *Libby*, 12 U. S. Pat. Gaz. 188; *Fischer* v. *Blank*, 138 N. Y. 244; *Munro* v. *Tousey*, 129 id. 38; *R. B. P. Co.* v. *Sherrel*, 93 id. 331; *Fleishmann* v. *Newman*, 4 N. Y. Supp. 642; 2 id. 608; *A. M. Co.* v. *Spear*, 2 Sandf. 599; *Fettridge* v. *Wells*, 4 Abb. Pr. 144; 13 How. Pr. 385; *L. & M. Co.* v. *Finzer*, 128 U. S. 182; *M. Co.* v. *Trainer*, 101 id. 51; *P. N. Co.* v. *Rouss*, 40 Fed. Rep. 585.)   The case is wholly without any evidence to support an injunction. (*L. M. Co.* v. *T. M. Co.*, 138 U. S. 537; *G. R. M. Co.* v. *G. R. Co.*, 128 id. 598.) There was no basis for any extra allowance.   The value of the trade mark was not in any way involved. (*H. F. Ins. Co.* v. *G. F. Ins. Co.*, 138 N. Y. 252.)

*H. Aplington* for respondent.   The plaintiff, being the owner and entitled to the exclusive use of the trade mark in question, is, under the evidence introduced in this case, entitled to an injunction. (*Coleman* v. *Crump*, 70 N. Y. 573;

*Popham* v. *Cole*, 66 id. 69 ; *L. & M. T. Co.* v. *Hynes*; 20 Fed. Rep. 883 ; *Talcott* v. *Moore*, 6 Hun, 106.) It is not necessary that the imitation should be an exact copy of the original trade mark, or so close an imitation that the two cannot be distinguished except by an expert or a wholesale or retail dealer in the article. (*Coleman* v. *Crump*, 70 N. Y. 573 ; *M. Co.* v. *Trainer*, 101 U. S. 64 ; *L. & M. T. Co.* v. *Hynes*, 20 Fed. Rep. 883 ; *Lawler* v. *Brett*, 20 id. 217 ; *Gillott* v. *Esterbrook*, 48 N. Y. 374 ; *Newman* v. *Alvord*, 51 id. 189 ; *Hier* v. *Abrahams*, 82 id. 519 ; *Drydopple's Borax Soap Case*, 14 Phila. 226.)

MAYNARD, J. The plaintiff is a Swedish corporation engaged in the manufacture of matches, and is entitled to the exclusive use of a trade mark consisting of a label affixed to a small rectangular box containing the matches, and having printed or stamped upon it in red colors the words, "The Vulcan," over a globe, upon each side of which are the representations of three medals awarded to the plaintiff at the Swedish exhibition at Gothenburg, in 1871, at the Russian exhibition at Moscow, in 1872, and at the Austrian exhibition at Vienna, in 1873, the obverse and reverse surfaces of the medals being both exhibited. There is also printed underneath the name, and over the globe, the words "Damp Proof," and beneath the globe, the words "Trade Mark," and at the bottom of the label the words "Paraffin Matches." This trade mark was adopted by the plaintiff in 1883, and has been used by it continuously ever since, and it derives large profits from the sale of its matches under it. The defendants are dealers in matches, and imported from Holland, in 1889, matches put up in boxes identical in size and general appearance with those used by the plaintiff, and bearing upon them a label also printed or stamped in red ink, and with letters of the same style as those upon the plaintiff's boxes, and upon which appear the words "The Vulture," and the picture of a vulture with outspread wings, and a fac simile of the medals awarded to the plaintiff, and the words "Damp Proof,"

"Trade Mark," and "Paraffin Matches," arranged in the same way as upon plaintiff's boxes.

The trial court has found that this use of the defendant's label is an imitation of the plaintiff's trade mark and so closely resembling it that when used upon boxes containing matches it has a tendency to create confusion in the market and mislead and deceive the public.

From an examination of the specimens submitted to us, we think that this finding is fully supported by the proofs.  The similarity between the names employed and the devices used ; the identity of the medals represented and the correspondence of size, color and general appearance, when combined upon the wrapper of a box, are so close and striking that an intending purchaser of the plaintiff's goods would be likely to be imposed upon if the matches sold by defendant in these packages should be offered.  While competition is essential to the life of commerce, and is the consumer's main defense against extortion, it should be fair and honest, and the manufacturer who produces an article of recognized excellence in the market, and stamps it with the insignia of his industry, integrity and skill, makes his trade mark a part of his capital in business, and thus acquires a property right in it, which a court of equity will protect against all forms of commercial piracy.  It is true that the principal points of resemblance between the wrappers occur on the top of the box, and that the words and characters on the bottom and one of the sides are widely dissimilar, both in general appearance and in the details of their arrangement ; but it is the top which is usually exposed to the eye of the buyer, and from which the impression would be produced as to the brand of the article offered for sale. The resemblance of the wrappers in this respect is so marked as to leave no room for doubt what the trade effect would be.

No evidence was given or offered to show that any person had actually been deceived by the imitation of the plaintiff's trade mark, and we think that none was necessary for the maintenance of the action.  It is the liability to deception which the remedy may be invoked to prevent.  It is sufficient

if injury to the plaintiff's business is threatened or imminent to authorize the court to intervene to prevent its occurrence. The owner is not required to wait until the wrongful use of his trade mark has been continued for such a length of time as to cause some substantial pecuniary loss. (*Manufacturing Co.* v. *Trainer*, 101 U. S. 51.)

The trial court has not found, and the proof does not indicate, any intention on the part of the defendants to infringe upon the plaintiff's trade mark. They are importers of the goods, and it is not shown that they have any interest in or control over their manufacture. On the contrary, their conduct has been such since the commencement of the action as to acquit them of the charge of any wrongful or fraudulent intent. But this question does not arise where nothing but preventive relief is granted. It might be material if damages were sought or claimed. As was said by Judge ALLEN, in *Coleman* v. *Crump* (70 N. Y. 573), it is not necessary to sustain an action of this kind, "either to establish a guilty knowledge or fraudulent intent on the part of the wrongdoer. It is sufficient that the proprietary right of the party and its actual infringement is shown."

The cases are numerous where this principle has been asserted and applied.

We discover no error in the record, and the judgment and order must be affirmed, with costs.

All concur.

Judgment accordingly.