(7 Misc. Rep. 56.)

### DE YOUNGS v. JUNG.

(Common Pleas of New York City and County, General Term. February 5, 1894.)

TRADE-NAMES—INFRINGEMENT—INJUNCTION.

> Defendant, under the name of "Young," engaged in a business similar to that done by plaintiff under its corporate name of "De Youngs," established himself in the same street near plaintiff, used similar business signs and advertising devices, and displayed the name "The Youngs" so that it differed from that of plaintiff only in the prefix "The." *Held*, that such use of the name and devices would be enjoined. 25 N. Y. Supp. 479, affirmed.

Appeal from special term.

Action by De Youngs, a corporation, against Solomon Jung, doing business under the name of "The Youngs," to restrain defendant from infringing the name and trade-mark of plaintiff, and from using the name "The Youngs" or "Youngs" in his business, and for damages. From an order granting an injunction, (25 N. Y. Supp. 479,) defendant appeals. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and PRYOR, JJ.

D. E. Anthony, for appellant.

John Jeroloman, for respondent.

BOOKSTAVER, J. This is an appeal taken by the defendant from an injunction restraining him from using the words "The Young" or "The Youngs," directly or indirectly, in connection with the business of making or vending photographic art products in a way calculated or intended to convey the impression that such business is identical with plaintiff's; also, the use of the name "Young" or "Youngs," in script, with the prefix "The," or one of like sound, and with or without a dash underneath, in connection with such

business.   "De Youngs" is the trade-mark of the plaintiff, an incorporated company organized under the laws of the state of New York, and doing business at 815 Broadway, and is placed on its photographs, crayons, circulars, bills, and signs, with a dash underneath.   Prior to May 1st the defendant had been using the words "The Youngs" with a dash underneath, upon his photographs, etc. On the 1st May, 1893, he moved into the second story of the building corner of Thirteenth street and Broadway, about a block above the plaintiff's place of business, and there established a photographic business under the name of "The Youngs," with a dash underneath, using the name upon his signs, photographs, etc.   It may be, as claimed by the respondent, that in modern German the "Y" is sometimes substituted for the "J." and hence that the family name of "Young" may now be used in that country, and that, therefore, the inference drawn by the learned judge who granted the injunction is not warranted by the facts.   But the use of the word "The" before the family name, and the addition of the "s" to the name "Young," arouses suspicion; the "The" and the "De" being of the same sound, or nearly so.   The proximity of the business of the appellant to that of the respondent; the close similarity of the script used; the dash underneath, displayed on signs, below the photographs, etc., together with the distribution of circulars in which it is said that "the reputation of our work is so well known by the public that customers may feel confident of receiving satisfaction," when in reality the business was only two or three years old, and was carried on by the defendant individually; the additional fact that at the top of such circulars there are fac similes of medals given as awards of premium or merit at the Philadelphia exhibition in 1876; the close similarity of the numbers of the street in which their respective business is carried on,—deepens this suspicion into something like conviction that the resemblances are not altogether unintentional and without design, especially when we remember that the word "The" cannot stand as an abbreviation of the defendant's given name, which appears by his naturalization papers and his passport to be "Sol," and defendant swears he has been known by that name from youth up, and not by the name of "Solomon" or "Theodore," or any other name that can be abbreviated into "The."    That these coincidences of names, styles of signs, impressions on billheads, etc., have led unwary persons from plaintiff's business, is apparent from the affidavits which were read as a part of plaintiff's moving papers. As was well said by the learned judge who granted the injunction:

"No person is bound to accept his patronymic as a surname, and he may engage in business under whatever name he sees fit, provided, however, that the assumption of any particular name for such purposes is unaccompanied by design to perpetrate a fraud upon others.   If so, the use of the assumed name should be restrained."

And equity will enjoin a party from so using his name as to cause the public to believe the goods of one man or firm are the productions of another.    Holmes, Booth & Haydens v. Holmes, Booth & Atwood Manuf'g Co., 37 Conn. 278; McLean v. Fleming, 96 U. S. 245.    So, too, a party has a right to use his own name, but he has

no right to do so with such additions to it as may deceive the public, or lead it to believe that he is selling an article made by another. Meneely v. Meneely, 62 N. Y. 427, cited in Caswell v. Hazard, 121 N. Y. 484, 24 N. E. 707; Clark v. Clark, 25 Barb. 76. To constitute an infringement of a trade-mark, exact similitude is not required; but an infringement has been committed when ordinary purchasers, buying with ordinary caution, are likely to be misled. McLean v. Fleming, supra. And positive proof of fraudulent intentions is not required, when probability of deception has been established. Taendsticksfabriks Aktiebolagat Vulcan v. Myers, 139 N. Y. 367, 34 N. E. 904; Id., (Sup.) 11 N. Y. Supp. 663; Cox, Trade-Mark Cas. 481; Colman v. Crump, 70 N. Y. 573. In the latter case, Judge Allen said:

"If the false is only colorably different from the true; if the resemblance is such as to deceive a purchaser of ordinary caution; if it is calculated to deceive the careless and unwary, and then to injure the sale of the goods of the proprietor of the trade-mark,—the injured party is entitled to relief, and may maintain an action to restrain such violation."

Proof that any one has been deceived is not necessary. Taendsticksfabriks Aktiebolagat Vulcan v. Myers, supra; Manufacturing Co. v. Trainer. 101 U. S. 57. We therefore think that the order appealed from should be affirmed, with costs. All concur.